Please rise, this court is now in session. You may be seated. 3-11-0392, people of the State of Illinois, I believe by Thomas Dorado v. Marcus T. Alexander, followed by Kenneth Hogan. Mr. Hogan, come on up. Thank you, Your Honor. May it please the Court, Kenneth Hogan on behalf of defendant, appellant Marcus T. Alexander. Defendant seeks reversal of his conviction for unlawful possession of controlled substance because he was denied a Sixth Amendment right to counsel of his choice. when the trial court abused his discretion by denying his retained counsel's motions to withdraw after defendant had terminated retained counsel's services. The freedom to retain counsel of one's choice is, according to the U.S. Supreme Court, the root meaning of the Sixth Amendment right to counsel. And a necessary corollary of that right is, of course, to dispense with retained counsel's services. That is not to say, of course, that there aren't restrictions on the right. It is not absolute. One cannot retain an attorney who is not a member of the bar, who has an irreconcilable conflict, or an attorney that one cannot afford. In addition, the trial court is invested with discretion to prevent abuse of the right when it is used solely to delay the proceedings or to thwart the orderly administration of justice. The appellate court, in its 2008 Tucker decision, first district decision, went through and identified a number of factors that Illinois Revenue Courts have found helpful in determining whether a defendant's request for new counsel is simply a delay tactic. Those factors have been applied in a variety of contexts, including an effort to substitute court-appointed counsel for retained counsel. That is not the case here. Again, it's the defendant's effort to dispense with the services of retained counsel. Tucker identified the length of time counsel has represented the defendant as a relevant factor, whether the defendant has been continuously in custody, whether the defendant has timely informed the trial court of efforts to obtain new counsel, and whether the defendant has articulated an acceptable reason for desiring new counsel. Now in this case, with respect to length of time, or rather with respect to continuous custody, the defendant was in custody beginning in September of 2010 when the state originally brought these charges. He was continuously in custody up until the time of counsel's motions to withdraw. In addition, the length of time, in this case retained counsel had actually represented the defendant for a matter of 29 days before the defendant had informed him that he was terminating his services. In addition, this is not a case where the defendant comes in on the day of the separate trial and says that I wish new counsel. He did inform, through his retained counsel, informed the court some 13 days prior to the date of the jury trial that he wished to dispense with retained counsel's services. And with respect to articulating an acceptable reason, the defendant's reason for dispensing with the services of retained counsel was certainly not arbitrary. Mr. Danner originally entered his written appearance indicating that he was providing pro bono services. Later on, in his motion to withdraw, he complained about the lack of compensation. He later adopted his earlier statement that he indicated to the court that he would accept his pro bono status. However, according to the defendant and his representations to the court, their communication had been limited to the discussion of Mr. Danner's lack of compensation and apparently his unwillingness to continue with representing. Well, the defendant didn't want to talk to him. That is true. He indeed did not want to. He made an effort to try to talk to the defendant. He did. However, that was only after Mr. Alexander had terminated his services. He did go back to the jail and attempted to, after the trial court had declined to, had denied the first motion to withdraw, Mr. Danner did attempt to engage Mr. Alexander. But Mr. Alexander has a right to his counsel of choice, and unless he is, his reason for not, you know, is completely arbitrary. And again, this articulable, acceptable reason for desiring counsel is one of many factors identified in Tucker and other cases. And it shouldn't be confused with the standard for ineffective assistance of counsel or for cause. It seems to be simply a non-arbitrary reason. And Mr. Alexander told the trial court... Well, what's the non-reason? Well, the reason that Mr. Alexander gave is that it's not well articulated. The court did not afford Mr. Alexander a wide latitude in making his comments, but he did state that he and Mr. Danner had discussed Mr. Danner's contract. And that was the... and they had not discussed Mr. Danner's ability, apparently, to defend the charges he was facing. So that was the statement that was given before the court. I mean... It could have been more elaborate, but... In other words, he's saying the lawyer didn't communicate with me, although he's the one not talking to the lawyer. Well, at that point, yeah. But he did describe what their discussions were, apparently, on March 5th, which was apparently their first meeting. And he did describe how they had discussed Mr. Danner's compensation. Now, whether or not Mr. Danner intended to take on pro bono status or not from the very beginning is not clear, but certainly a defendant is at a tremendous disadvantage if he is going to be settled and go to trial with an unwilling pro bono attorney. Was there any error in this case? Any error? Any error in the trial? No, and I can't say that I... That is not part of the inquiry for right to counsel of choice. The defendant under U.S. v. Gonzales-Lopez has no burden to show any resulting prejudice from his right to counsel of choice. So Mr. Danner did cross-examine the witnesses and so forth, but again, I wouldn't want the court to confuse or to conflate the inquiry on right to counsel of choice with the inquiry on the overall right to counsel in the Sixth Amendment, the right to effective assistance of counsel. With respect to delay as well, the state in its brief indicates that there would be delay if Mr. Attorney Danner's motions to withdraw, either of them had been granted, and inevitably there would have been some delay, but the question is whether it would have been unreasonable. And there had been one continuance in this case when Mr. Danner came into the case. There wasn't anybody stepping up to try the case, was there? No, there was not. So it was a separate trial that had been continued before? It had been continued once before. And nobody came and said, I'm representing the guy now. I'm sorry? Nobody came and said, I'm representing the guy. That is true. There was some cryptic statement made by the defendant that he paid somebody. Yes, he did indicate that he had paid or others had paid on his behalf $1,000 to a Mr. Zachman. The state also mentioned that the defendant had apparently paid to a Mr. Smith someone else. And the state, I know in its brief, seems to indicate that that's an indicator that he had resources and that he could therefore hire another attorney and presumably should have looked into it earlier. But if you look at the comments very carefully, the comments indicate more so that the defendant was, in fact, out of resources at this point. So the determination here is whether or not he would therefore be entitled to court appointed counsel if his wishes to withdraw were granted. Well, he never made a request for appointed counsel. Attorney Danner suggested initially and then didn't point out to the court that the public defender would be available to defend Mr. Danner. The defendant never requested it. Well, he didn't voice any objection to it. And it was mentioned over and over again before the trial court. But the lawyer didn't want to do a pro bono. That's correct. That's correct. And he was apparently unwilling to defend Mr. Alexander. Well, actually, he did defend Mr. Alexander. Well, when he was ordered by the court to do so, he did. I'm not sure that's the root meaning of the right to counsel choice. That would seem to be saddling the defendant with an unwilling pro bono attorney. Well, who picked this guy in the first place? Well, it's not clear whether or not the defendant or his family initially made contact with him, but presumably the defendant did acquiesce to his entering an appearance initially. That is correct. There were times before the court that they both stood up there together. There would have been initially, there would have been, yes, at the initial pretrial conference after Mr. Danner entered his written appearance. That's true. The defendant isn't saying that he didn't initially desire Mr. Danner's services. He's saying that he should have the right to be able to dispense with his retained counsel services. And I think that the court in the Second District 2010 decision in Abernathy supports the defendant's view that he should be able to, unless his action is unreasonable, unless it's an apparent attempt to thwart the orderly administration of justice, that he ought to have the right to dispense with his retained counsel services. And if he does turn out to be indigent, and that inquiry would seem should have been made, would have been made had a motion to withdraw been granted in this case, then he would be entitled to court-appointed counsel. It's not clear that, there's nothing in the record that shows how a defendant's delay of this would somehow benefit him. He was incarcerated through this entire period. Did the defendant ask for a continuance? The defendant never asked for a continuance. He simply... His attorney asked to withdraw. It's true. The attorney... Is there any showing the defendant wasn't willing to proceed pro se? There's no inquiry into whether or not that was his desire or not, or what his desire was, should his counsel be allowed to withdraw. That inquiry was never made. Including a request for a public defender. That's correct. You'd already been represented by a public defender who got a mixed decision. That's correct. Initially, the defendant apparently cooperated with the public defender. The case was tried earlier to a mistrial due to a hung jury. It all changed, you mean? That's true. The options were never considered by the trial court. The trial court never considered what would occur if I were to grant this motion to withdraw. How much delay there would be? The court could control the setting of the jury trial, and unless it could have explained to the defendant, if your attorney withdraws, we're still going to have this trial. That could have been an explanation that was made that it was not. Are you ready to proceed pro se? Again, those options. What occurs if Mr. Danner is allowed to withdraw, that was never addressed by the trial court. The trial court... The defendant didn't ask anything from the trial judge about that? No, he didn't. The transcript, though, doesn't appear to show a trial court that was really interested in talking to the defendant in a way. He cut him off at several points. He made an inquiry that the defendant tried to respond to at one point, and the trial court said, well, that was rhetorical, and cut him off. And later on, the defendant, after the second motion to withdraw was denied and the jury trial was about to commence, the defendant tried to offer the trial court a letter. Mr. Danner duly delivered it to the trial court, but the trial court wouldn't receive it. So there doesn't seem to be a lot of inquiry here by the trial court. Simply, at least one-on-one with the defendant, it seems to be mainly just simply a response to counsel's written motions to withdraw. If there are no further questions, I would just simply reiterate that we ask for reversal of the conviction in a new trial based on the violation of Mr. Alexander's right to counsel's choice under the Sixth Amendment. Thank you. Mr. Alvarado, when you're ready. Good morning, Your Honor. Sir Connors, may it please the Court. Counsel. The defendant does have the right to counsel's choice. However, there is limits to that choice. If you look at the history of this case, there was previously a trial, ended up in a hung jury, set for a new trial. February 4th, the defendant's new attorney shows up and says, hey, can you set it for a later date? I'm imitating my appearance. The appearance says pro bono. No one else has made a record about that, but his appearance says pro bono. So there had been one continuance by defense counsel attributable to the defendant. Correct. And that continuance was for a month? To the 21st, so about a little more than a month. There was a pretrial conference scheduled for March 11th, and then a trial scheduled for March 21st. During the course of that period of time, apparently counsel had a discussion with the defendant and then filed a motion to withdraw, which was heard on March 11th, which was the pretrial conference date. What were the issues that had come up? Well, the attorney said he's not paying me, therefore I don't want to withdraw, and he isn't cooperating with me, therefore I want to withdraw. He also said that he wants to terminate the services. Now the defendant doesn't specifically say that on the record, but that's what representation is. The court talks to the parties, and the attorney says, well, you know what? This was said pro bono. I'm going to stand by that. I will appear pro bono. But still, he doesn't want me. He's not cooperating with me. And the reason why the defendant didn't want to cooperate with him was because he wasn't talking to him, because he wasn't talking about his contract. Well, the judge says, okay, we've resolved that. You get time to talk to him. He's going to represent you pro bono. The fee issue is gone. The communication issue is gone. Now we can proceed. So the fee issue is gone because the judge made it gone, not because the lawyer or the defendant. Resolved the alleged complaints of the parties, lack of communication and lack of payment. I mean, that was resolved because the trial court did it by fiat, right? I mean, not because. To a certain degree, but we still have the parties acknowledging at that point that he's going to be the attorney because Mr. Danner does go to the defendant, attempts to see him, and the defendant refuses to cooperate, refuses to meet him. So another motion to withdraw his file, which is heard on the day of trial. Now the Supreme Court has set forth in Segoviano that you have to have somebody, another counsel, ready, willing, and able to appear if you're going to have this current counsel withdraw. And that was not the case. The case relied upon by Defendant Tucker. The court did set forth all these various factors, but the court noted that most of those factors were present. It focused only upon whether the trial court made an adequate inquiry into the reasons why the defendant wanted a new counsel. And here, there was discussion about what the issues were. Well, he's not bringing me my discovery. He's not letting me read my discovery. He's not letting me go through the not preparing for the case. Well, as Justice Carter pointed out, the defendant's counsel went to him, said, hey, let's prepare for trial, and the defendant said, no way. And this is after he knows that the defense counsel's motion withdraws with the matter. So he knows he's going to trial. He knows that there's a trial set. And yet, so whose fault is it that this situation arose? Well, the defendant wanted to get rid of the public defender, and he did. He hired a private counsel. The private counsel appeared pro bono, as it turned out, and then the defendant refuses to cooperate with him after he's told this is what's going to happen. So this defendant is causing these. And the court, Judge Collier, specifically found that he was making this ruling because he believed that this was an attempt to thwart the administration of justice. The cases, other cases, Tucker and Ortiz and Abernathy, there's no finding by the trial judge on that particular point. The courts have noted that. Also, it should be pointed out, Ortiz and Rivera-Corona are not Illinois cases, and the Illinois Supreme Court has specifically talked about what's needed in this court. Obviously, it's not bound by any jurisdictional cases. So I would suggest that there is ample support in the record for the trial judge's decision to not abuse his discretion. There was some discussion that counsel's performance had no bearing upon the decision. Yes or no, there is no standard of effective assistance counsel. One of the cases points out that, well, making an attorney appear pro bono when he doesn't want to might affect his performance. Well, Mr. Dan's performance was admirable. He did everything that an attorney is supposed to do. So that undercuts this concern that making somebody appear pro bono is going to affect their performance. Is that bringing prejudice to the back door? In the sense that a right to counsel exists independent of whether you received a fair trial or were prejudiced by the representation? Well, not really. I mean, to a certain degree, you could make that argument. But I think the point is that if you're concerned about an attorney appearing pro bono, that's going to affect their performance. If you can actually show that performance wasn't affected, perhaps prejudice should be considered. I realize that cases don't say that. But if cases do say you don't have an attorney ready, willing, and able to appear at the time, that's a problem. I mean, here you don't have an attorney showing up for the guy, although he claims there was some money that you changed. Then he refuses to do anything with the one lawyer. Correct. And then you've got a finding from the trial judge that he's interfering with. Right?  This was thwarting the administration of justice. Because of a one-month delay of the retrial. Well, this is something that the defendant was on notice that the motion of withdrawal was denied, and yet he refused to cooperate with an attorney who wasn't going to charge him and wanted to help him. But they had not had a good relationship. I mean, a lawyer says, I'll do it for free, and then all their discussions center around, what are you going to pay me and when? I do have some sympathy for a breakdown of the attorney-client relationship. And I'm troubled by some of the court's comments. It seems as though the judge believed, because there had been a previous trial, attorney Danner could represent defendant with very little preparation. Would you speak to that? Well, the discussion was that you already have the transcripts of the previous trial, so you know what the issues are. And it's a pretty basic case. It didn't last very long, the trial itself. And I don't think the previous trial lasted very long. So the issues truly weren't complicated. So would a delay have been terribly long? Maybe, maybe not. We don't know. There was already over almost a 40-some-odd-day delay in the trial because of the defendant. The defendant delayed it February 4th, and the defendant's delaying it again March 21st. Is he going to delay it again because the attorney decides he wants to go pro se, maybe, or probably not since he never, ever in any of these instances has said, I want to go pro se. So at what point does a trial judge say, enough is enough, I don't want you to keep kicking this can down the road. We've got to step up. What was the time frame from the date of the mistrial until the new jury set in? I believe it was, I want to say December was when the new trial date February was set. So it was about two months or so, maybe not quite two months. All right. Thank you for addressing my question. If there are no other questions, we'd ask that you affirm the defendant's conviction. Thank you. Thank you. Mr. Hogan? With respect to the defendant's, you know, acceptable reason given for whether or not there was reason once for dismissing Mr. Danner, again, first of all, it's not, he doesn't have to have necessarily a cause. He needs to simply have some sort of articulable, non-arbitrary reason it would seem. And in his colloquy with the trial court regarding Mr. Danner's first motion to withdraw, he does, he is asked, you know, the trial court points out what your Honor pointed out. He said, you selected him. The defendant says, yeah. The court says, all right. The defendant says, I mean, we talked, we went over a contract, but we ain't never go over my case. He ain't never tell me his capacity in handling cases. So that is apparently, you know, the defendant's reason for finding Mr. Danner's services unacceptable. And again, as Mr. Danner says, I was never a pro bono. It was a mistake that my appearance, written appearance said pro bono. So apparently that was an issue between Mr. Danner and the defendant. It wasn't simply Mr. Danner. It was an issue before the trial, before the last trial. I mean, that was resolved. He was pro bono. Well, he accepted, he told the court that it was a mistake and that he wasn't a pro bono from the start. He did. He did. Apparently, you know, unwilling pro bono counsel. He was essentially forced. He was sort of drafted. And so the, and also with respect to whether or not counsel was ready, willing, and able, I think the Abernathy Court, again, we're getting ahead of ourselves because the inquiry here does not, the court's inquiry does not get into what happens if a motion to withdraw is granted in this case. But in Abernathy, the court made clear if the defendant here is indigent, which it certainly appears that he may be, that he would be entitled to a public defender. And, of course, there is, additionally, there is the option that he might want to proceed pro se. And with respect to Mr. Danner's performance at trial, we simply, I think to say he performed admirably is saying a little much. We really don't know. We really don't know what might have happened if the defendant had had a counsel of his choice and they had, perhaps there would have been other witnesses. It's impossible to know. And with respect to whether or not, you know, defendant is going to do this again, well, that's another case. He did, you know, there was one, there was one retained counsel, defendant and counsel didn't get along apparently. It was brought to the attention of the court rather quickly. And that would, that's the case we have. To decide this case on whether or not defendant would, you know, if Mr. Danner's motion to withdraw were granted, would seek to dismiss the public defender or something. It seems to be simply speculation. And it's just not this case. It's not what's before this court. Is there anything in the record that suggests a pattern before? It was tried before? Were there delivery delays before? Not at all. The, this was, these charges were brought in September of 2010 when Mr. Alexander was arrested. And the trial was concluded on December 29th. Public defender was defendant's counsel. There was, there didn't seem to be any issues of delay, where indeed defendant didn't make any effort to dismiss the public defender or proceed pro se or proceed in any other manner than cooperation with his counsel. Unless there are any other questions. Thank you very much. Thank you. We will stand in recess for a lunch break and render the decision hopefully without undue delay. The floor is now in recess.